### WALTERS *v.* PIERSON.

1. BROKERS—CONSTRUCTION OF CONTRACTS—SALE OF LAND CONTRACTS. Brokerage contract for sale of land contracts which defendants had previously purchased through plaintiff real-estate broker and attorney is not construed as requiring a sale of the entire 19. which defendants had purchased in order to entitle plaintiff to sums claimed for sale of 17 such contracts pursuant to terms of brokerage contract.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  8 Am Jur, Brokers § 18.
[3]  5 Am Jur, Attorneys at Law § 50.
[4]  54 Am Jur, Trusts § 287.
[5]  4 Am Jur, Assumpsit § 44 *et seq.*; 8 Am Jur, Brokers § 213.
[6]  14 Am Jur, Costs § 92.

2. SAME—CONSTRUCTION OF CONTRACTS—APPROVAL OF SALES.

Brokerage contract for sale of land contracts which defendants had previously purchased through plaintiff real-estate broker and attorney, containing provision: "If any contract is sold less than the purchased discount we will pay you $50 for each contract. Such sales to be expressly approved by ourselves," is not construed as extending requirement of approval by defendants of sales by plaintiff to all sales made by latter under the brokerage contract.

3. ATTORNEY AND CLIENT—ATTORNEY'S BUSINESS DEALINGS WITH CLIENT—BURDEN OF PROVING FAIRNESS.

Situations wherein attorneys engage in business dealings with clients whom they represent legally are not favored, and the lawyer has the burden of proving fairness on his part.

4. TRUSTS—FIDUCIARIES—JUDICIAL SCRUTINY OF TRANSACTIONS.

Courts will scrutinize with great care a transaction whereby it is claimed that a fiduciary relationship had resulted detrimentally to the beneficiary party.

5. ASSUMPSIT—BROKERAGE CONTRACT—EVIDENCE.

Evidence presented in nonjury assumpsit action by licensed real-estate broker and attorney under brokerage contract with defendants for whom he had previously purchased 19 land contracts, the subject of the brokerage contract, for sums claimed due thereunder because of offer to purchase 17 contracts which plaintiff had procured, *held*, to have entitled plaintiff to sum found due by trial judge, where no fraud on part of plaintiff was claimed and trial judge rejected the only land contract which might not have met all the standard conditions in a real-estate purchase.

6. COSTS—BRIEFS.

No costs are allowed on affirmance of judgment in nonjury assumpsit action for sums due under brokerage contract, where appellee filed no brief.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted January 12, 1960. (Docket No. 52, Calendar No. 47,785.) Decided February 26, 1960.

Assumpsit by Beryle Walters against Max J. Pierson and Monya Pierson for sums due on agreement

for sale of land contracts.   Judgment for plaintiff.
Defendants appeal.   Affirmed.

*Sidney Fershtman* (*Isaac M. Smullin,* of counsel),
for defendants.

EDWARDS, J.    This is a suit in assumpsit for money
plaintiff-appellee claims is owed on a contract.   The
trial judge found that plaintiff-appellee had per-
formed his part of the contract fully and that defend-
ants-appellants had breached their part.   The cir-
cuit judge entered a judgment for $5,100.77 in favor
of appellee, and this appeal resulted.
Appellants have furnished a statement of facts
which, although somewhat self-serving, we employ
with the excision of a few sentences of argument or
irrelevancy.   Appellee has filed no brief.

"Max J. Pierson, one of the above named appel-
lants, is a medical doctor with no experience what-
soever in the real-estate business and Monya Pier-
son, his wife, is of foreign extraction and is not well
versed in the English language.
"Beryle Walters, the appellee, is a practicing at-
torney and a real-estate broker.   Upon the sugges-
tion of Beryle Walters the appellants agreed to buy
certain land contracts which would be recommended
to them by said Beryle Walters.   They purchased the
total number of 19 land contracts which land con-
tracts Beryle Walters, the appellee, recommended
to them and said Beryle Walters kept said land con-
tracts in his office, collected the monthly payments
for which he was paid a fee.
"That on or about the 6th day of March, 1956,
the appellants met with Beryle Walters at his offices
where they informed Beryle Walters that they de-
sired to sell all their land contracts and Beryle Wal-
ters thereupon prepared a written authority to him.

"That the apellants received an offer to purchase from Melvin F. Lanphar, Inc., to purchase 17 contracts * * * subject to 14 conditions. * * *

"The appellants refused to accept the offer from Melvin F. Lanphar, Inc., relying upon the express provision that the sale of the land contracts was subject to the express approval by the sellers and they refused to approve the same. They also relied upon the fact that Beryle Walters was authorized to offer for sale all of the land contracts, which were owned by the appellants, were 19 and the offer by Melvin F. Lanphar, Inc., was for the purchase of 17 land contracts only. They also relied upon the fact that the offer to purchase made by the Melvin F. Lanphar, Inc., was subject to conditions which were not included in the original authority given to Beryle Walters, exhibit A, and they therefore refused to approve or accept the offer from said Melvin F. Lanphar, Inc. * * *

"From the pleadings in both cases it conclusively appears and it was admitted by the appellee that he was the attorney and broker of the appellants. That he prepared exhibit A in which he relied in his assumpsit action for commission."

The contract executed by the parties was as follows:.

*"Dear Mr. Walters:.*

"This is to authorize you to sell all of our land contracts which we now hold in accordance with the following schedule of payments to you.

"1. We will guarantee you the sum of $100 for each contract sold at the discount at which we purchase same.

"2. In addition to the $100 we will pay you 1/2 of the difference realized between the purchased discount and that smaller discount obtained at the time of sale.

"If any contract is sold less than the purchased discount we will pay you $50 for each contract. Such sales to be expressly approved by ourselves.

"This agreement will last for a period of 60 days (MJP).

"If the above terms are agreeable to you kindly sign the duplicate copy and return.

"Approved:  /s/  Max Pierson
            /s/  Monya Pierson

"Accepted:

/s/  Beryle Walters

"Witness:

Delphine Mercier"

As indicated by the next to the last paragraph of their statement of facts as quoted and their statement of questions on appeal, appellants claim that the first sentence of the contract required appellee to sell all of the contracts before he was entitled to any compensation. They also contend that the last sentence in the fourth paragraph of the contract, "Such sales to be expressly approved by ourselves," applied to the whole contract, rather than to the paragraph dealing with sales below cost to the sellers in which it was located.

The simple answer to these contentions is that no fair reading of the contract itself may be said to occasion any such interpretation.

The trial judge apparently paid heed to appellants' claims of existence of a fiduciary relationship, and reliance of the appellants upon the draftsmanship of the contract by appellee. *Sroka* v. *Catsman Transit-Mix Concrete, Inc.,* 350 Mich 672; *Gee* v. *Olson,* 320 Mich 274. He allowed considerable oral testimony wherein appellants sought to explain the meaning of claimed ambiguities in the contract.

At the end of such testimony, he found that the contract meant what it clearly appears to say on its face, *i.e.,* that appellee was "authorized," but not required, to sell all of the contracts, and that the sellers' approval was required as to any land contracts

sold below cost. Pertaining to the testimony, he said:

"In arriving at this conclusion, the court deems it only fair to say that it found Mrs. Pierson's testimony in many instances very questionable of credibility, found that Mrs. Pierson in certain instances testified in a manner the court cannot accept, and finds that Doctor Pierson in his testimony, in many instances, was evasive and not forthright and direct. On the other hand, the court finds the testimony of both Mr. Walters, the plaintiff, and Miss Mercier, the other witness, to be forthright and direct on this issue and on other issues."

Appellee, herein, was both an attorney and a licensed real-estate broker. And the record does not indicate that he always established clearly in which capacity he was acting. Situations wherein lawyers engage in business dealings with clients whom they also represent legally are not favored.

In such matters, the lawyer has the burden of proving perfect fairness on his part. *Swaim* v. *Martin,* 158 Ark 469 (251 SW 26). See, also, 7 CJS, Attorney and Client, § 127. A business relationship between attorney and client, in Justice Cooley's phrase, requires "the utmost good faith" on the part of the attorney. *Payne* v. *Avery,* 21 Mich 524, 543. Such a transaction between attorney and client "is a fiduciary one, not measured by the rule of dealing at arm's length." *Rippey* v. *Wilson,* 280 Mich 233, 243. Where there is, as here, a claim that the fiduciary relationship resulted in a detriment to the client, the courts will scrutinize the transaction with great care. *McIntosh* v. *Fixel,* 297 Mich 331. This, we believe, the trial judge did.

We do not deal here with any claim of fraud on the part of the appellee. Apparently appellee produced a number of profitable transactions for appellants, and appellants seek to affirm and take full advantage

of them. The disagreement over appellee's sharing in the profits of the land contracts really arose when appellants discovered how large those profits might prove to be.

We have examined the Lanphar company offer and find that the terms were definite and the "conditions" were standard ones in real-estate purchases. The only land contract which the record discloses might not have met all the conditions was eliminated by the trial judge before computation of damages.

Affirmed. No costs, since appellee filed no brief.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.