Sylvester **RUGUMBWA**, Plaintiff,

v.

**BETTEN MOTOR SALES**, Defendant.

No. 1:00CV363.

United States District Court, W.D. Michigan, Southern Division.

March 16, 2001.

Phillip C. Rogers, Grand Rapids, MI, for plaintiff.

Michael D. Wade, Garan Lucow Miller, P.C., Grand Rapids, MI, for defendant.

## ORDER

BRENNEMAN, United States Magistrate Judge.

Plaintiff has filed a class action complaint alleging that defendant Betten Motor Sales made false representations to consumers regarding the cost of vehicle service contracts, specifically that defendant "was secretly retaining a substantial portion of the cost of each vehicle service contract for itself" in violation of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*, the Michigan Motor Vehicle Installment Sales Contracts Act, Mich. Comp. Laws § 556.301 *et seq.*, and the Michigan Motor Vehicle Sales Finance Act, Mich. Comp. Laws § 492.101 *et seq.* This matter is before the court on defendant's motion to compel arbitration (docket no.22).

### Background facts

This suit involves plaintiff's purchase of a 1991 Toyota Camry from defendant. The parties have presented five documents related to the transaction that were signed by plaintiff and defendant's representatives on July 10, 1999. Those documents include: a handwritten sales order; a typewritten sales order; an Automobile Retail Installment Contract (installment contract); an application for a Michigan title; and an odometer disclosure statement. Defendant seeks to enforce the arbitration clause which appears on the two sales orders and which states as follows:

**ARBITRATION REQUIRED BY THIS AGREEMENT.** The parties agree that instead of litigation in a court, any dispute, controversy, or claim arising out of or relating to the sale of the motor vehicle or this Sales Order or to any other document or agreement between the parties relating to the motor vehicle, including the parties' retail installment contract, if any, shall be settled by binding arbitration administered by the American Arbitration Association, under its Commercial Arbitration Rules. Such arbitration shall be conducted in Kent County, Michigan. Each party will pay their own costs. Any judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Initially, the court notes that the two sales orders do not contain identical terms regarding the amount of the transaction. The handwritten sales order indicates a "base price of vehicle" for the Camry of $7,990.00, with an "unpaid balance to be financed" of $7,238.40. The typewritten sales order, which also states a base price of $7,990.00, shows an unpaid balance to be financed of $8,725.80. The difference between the two sales orders appears to be a change in the sales tax from $489.40 to $481.80 and the addition of an extended service agreement in the amount of $1,495.00.

The transaction described in the installment contract is substantially different from the transactions as set forth in the sales orders. While the installment contract reflects the same base price for the Camry as both sales orders, the installment contract does not include the arbitration clause. The installment contract in-

cludes the sales tax of $481.80 and the extended warranty of $1,495.00 found in the typewritten sales order. However, the installment contract. includes a credit life insurance premium of $163.01 and a credit disability insurance premium of $532.12, as well as a different "amount financed" of $9,420.95. The application for Michigan title contains the same numbers found in the installment contract, which suggests. that the installment contract reflects the actual transaction reported to the state.

**Enforcement of the arbitration clause**

■ A party's agreement to arbitrate is essentially a waiver of the party's right to seek relief in a judicial forum. *See Kennedy v. Superior Printing Co.*, 215 F.3d 650, 653 (6th Cir.2000). The Federal Arbitration Act (FAA), 9 U.S.C. § 2, favors the implementation of arbitration agreements, providing in pertinent part:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save such grounds as exist at law or in equity for the revocation of any contract.

In *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308 (1998), the Sixth Circuit discussed enforcement of arbitration agreements under the FAA:

> The FAA establishes a "federal policy favoring arbitration … requiring that we rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (internal quotations and citations omitted). In *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134

L.Ed.2d 902 (1996), the Supreme Court reiterated that general state contract principles, as opposed to state laws applicable only to arbitration provisions, may regulate, and in the appropriate case, invalidate, arbitration clauses. *See id.* 517 U.S. 681, 116 S.Ct. at 1655–56 (citations omitted); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("When deciding whether parties agreed to arbitrate a certain matter … courts generally should apply ordinary state-law principles that govern the formation of contracts.") (citations omitted).

*Andersons, Inc.*, 166 F.3d 308 at 322.

■ When asked by a party to compel arbitration under a contract, a federal court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000), *petition for cert. filed*, —— U.S. ——, 121 S.Ct. 1088, 148 L.Ed.2d 963.

As its first task, the court must determine whether the parties agreed to arbitrate the statutory violations alleged in plaintiff's complaint. Defendant urges the court to adopt the arbitration clause contained in the sales orders. Plaintiff, on the other hand, contends that the court should reject the arbitration clause because it is not contained in the installment contract. In determining whether the parties agreed to arbitrate this dispute, the court seeks

guidance from the two acts that regulate retail installment sales of motor vehicles in Michigan, i.e., the Michigan Motor Vehicle Installment Sales Contracts Act (MVISCA) and the Michigan Motor Vehicle Sales Finance Act (MVSFA).[1]

■ The MVISCA provides in pertinent part that "[e]very retail installment sale of a motor vehicle shall be evidenced by an instrument in writing ... The written instrument shall contain all of the agreements of the parties made with reference to the subject matter of the retail installment sale..." Mich. Comp. Laws § 566.302. In addition, the MVSFA provides in pertinent part that "[a]n installment sales contract shall be in writing, and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold...." Mich. Comp. Laws § 492.112(a).

The sales orders appear to be offers placed by plaintiff to purchase the vehicle. However, neither of the sales orders, if accepted by defendant, would qualify as the installment sales contract envisioned by the MVISCA and the MVSFA. The two sales orders contain different proposals and neither form includes an express agreement by plaintiff to purchase the Camry. Furthermore, neither of the orders addresses all of the terms of the transaction. For example, neither form refers to the credit life insurance premium, the credit disability insurance premium, the interest rate, nor the $9,240.95 to be financed. The installment contract is the only instrument that contains all of the agreements related to the transaction. Accordingly, the court finds that neither sales orders would qualify as installment contract under the MVISCA and the MVSFA.

■ While the arbitration clause purports to apply to the parties' retail installment contract "if any," the court rejects defendant's assertion that the clause in the sales order should be read in conjunction with the installment contract. The clear language of the MVISCA and the MVSFA envision the execution of a single, comprehensive installment contract containing all of the agreements made by the parties with regard to the subject matter of the retail installment sale. The installment contract here does not include the arbitration clause. Accordingly, the court finds that the arbitration clause contained in the sales orders does not apply to the sale of the Camry.

This determination finds support in the recent decision of Senior District Judge Douglas W. Hillman in *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 339 (W.D.Mich.2000), which held that an addendum to a vehicle retail installment sales contract is not enforceable as a matter of law because the MVISCA and the MVSFA require all of the agreements between the parties to be included in a single installment sales contract.[2] Here, the sales orders in the present case were not

---

1. Neither party has relied upon the Uniform Commercial Code (UCC) to support their positions. While the UCC governs the sale of goods, its provisions do not govern the means by which automobile ownership is transferred, except to the extent that the Michigan Vehicle Code contains no applicable law. *See Whitcraft v. Wolfe*, 148 Mich.App. 40, 50, 384 N.W.2d 400 (1985). Similarly, the terms of the MVISCA governs installment sales of motor vehicles. *See, e.g., Roe v. Flamegas Industrial Corporation*, 16 Mich.App. 210, 212–213,

167 N.W.2d 835 (1969) (violation of the MVISCA's requirement that every retail installment sale of a motor vehicle shall be in writing voids the transfer of the motor vehicle even though the contract is not invalid under the UCC's statute of frauds).

2. This citation should not be confused with Judge Hillman's earlier opinion in the same case, *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F.Supp.2d 1087 (W.D.Mich.2000), in

even appended to the installment contract, but were entirely separate documents from the single installment sales contract mandated by both the MVISCA and the MVSFA.

■ Furthermore, even if the arbitration clause was found to be part of the installment contracts, defendant has waived arbitration. A party's waiver of the right to arbitrate "may be implied when a party actively participates in a litigation or acts in a manner inconsistent with its right to proceed to arbitration." *Joba Construction Co., Inc. v. Monroe County Drain Commissioner*, 150 Mich. App. 173, 178, 388 N.W.2d 251 (1986). Defendant has actively participated in this litigation and acted in a manner inconsistent with its right to proceed with arbitration. Defendant did not raise the arbitration defense in its original answer filed June 12, 2000, or in the joint status report submitted the following month pursuant to FED. R. CIV. P. 16.[3] Defendant did not seek to stay the proceedings when it sought to amend its answer to add its affirmative defense of the arbitration agreement, and then filed a motion to add third-party defendants before filing its motion to compel arbitration. Furthermore, even after filing its motion to compel arbitration, defendant continued actively seeking to litigate its case in this judicial forum. On November 20, 2000, defendant filed a motion seeking the benefit of a summary judgment even though the deadline for dispositive motions is not until July 2, 2001. Finally, defendant does not dispute that the parties have engaged in substantial discovery, which includes: serving plaintiff with interrogatories and document production requests, serving plaintiff with supplemental interrogatories and document production requests, and deposing plaintiff. All of this leads the court to the inescapable conclusion that defendant has acted in a manner inconsistent with its right to proceed with arbitration.

■ The court makes this finding notwithstanding the fact that the rules of the named arbitrator provide that "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." American Arbitration Association, commercial arbitration rule R–50(a). While parties can modify the general waiver rule "by contractually designating arbitration rules that speak to waiver, such modification is dependent upon applicable state law." *See WorldSource Coil v. McGraw*, 946 F.2d 473, 477 (6th Cir.1991). In Michigan, "[t]he existence of a contract to arbitrate and the enforceability of its terms is [sic] a judicial question that cannot be decided by an arbitrator." *Arrow Overall Supply Co. v. Peloquin Enterprises*, 414 Mich. 95, 99, 323 N.W.2d 1 (1982). Because the enforceability of the arbitration agreement is a judicial question, the court is not bound by the arbitrator's rules defining a waiver of the arbitration agreement.

Accordingly, defendant's motion to compel arbitration (docket no.22) is DENIED.

**IT IS SO ORDERED.**

---

which he found certain arbitration language as unconscionable.

**3.** Defendant suggests that it failed to raise the arbitration clause because it was unaware of the clause when it filed its answer. The court is troubled by defendant's contention that it did not discover the arbitration clause found in its own "sales order" forms until after it filed its answer. Defendant's position underscores the reason why a single retail installment contract should contain all of the agreements between the buyer and seller relating to the sale of the vehicle.